# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br>vs.<br><br>NOU XIONG,<br><br>        Defendants. | 3:13-cr-043-SLG-JDR<br><br>**RECOMMENDATION<br>REGARDING<br>MOTION TO SUPPRESS**<br><br>(Docket No. 22) |

Defendant **NOU XIONG** moves for an order suppressing evidence seize during the execution of search warrants 3:12-MJ-00355 and 3:12-MJ-00356 on grounds that the officers executing the warrants exceeded the scope of the warrants and no applicable exception to the warrant requirements applies. Docket 22. The motion is opposed by the government. Docket 23. An evidentiary hearing was conducted before the Magistrate Judge on July 25, 2013. For reasons stated below the Magistrate Judge recommends that the Motion to Suppress be GRANTED.

## Procedural History

Inspectors with the United States Postal Service on or about November 14, 2012 intercepted two suspicious packages that had been mailed to Anchorage from the same address in Sacramento, California. The agents sought and obtained federal search warrants for the packages. *See* Search Warrant applications 3:12-mj-353 and 3:12-mj-354. Upon executing the warrants the agents discovered heroin concealed in one package and methamphetamine concealed in the other. Officers conducted controlled delivery of the two packages. the packages were taken to 905 Muldoon, Space A78. After entering the residence officers seized firearms and arrested the defendant. The defendant was charged with being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). Docket 2.

## Findings of Fact

The postal inspector sought and obtained an order authorizing the installation of monitoring of an electronic alerting device and tracking device as a physical surveillance aid for each of the packages on November 15, 2012. Each affidavit describes the execution of a federal search warrant for opening the parcels and what each subject parcel was found to contain.

The first parcel was found to contain about four pounds of a white crystal substance concealed in two layers of zip lock bags and tin foil inside a

"sunbeam heater." The second parcel was found to contain about two pounds twelve ounces of a brown substance concealed in two layers of balloons inside jars of "Skippy" Peanut Butter. The substance in the first parcel tested positive for methamphetamine whereas the substance in the second parcel tested presumptively for heroin.

### Application for Controlled Delivery

Postal Inspector Kimberly Dallas applied for and received court orders allowing law enforcement to place electronic monitoring and tracking devices inside each of the packages. These devices allowed law enforcement to track the packages once they were delivered and to notify law enforcement when and if the packages were opened.

Officers of the law installed the tracking devices and then delivered the packages to two separate addresses in Anchorage. Officers executed the court's orders and seized evidence of drug trafficking.

In her affidavits for the tracking warrants the postal inspector requested the following:

> "An order for the installation and monitoring of electronic alerting device and tracking device in the subject parcel for three (3) days, to aid the officers in detecting when the suspect(s) open the subject parcel to examine or revoke

3

(sic) the placed sham controlled substance and to track the subject parcel if they are moved from the delivery address to a different location. In addition, I request that the Order allow officers to monitor the electronic alerting device and tracking device on either public or private property, including the location of initial delivery and any other property to which the subject parcels are transported. After the electronic alerting device goes into "alert" mode, indicating that the subject parcel was open, or if it is determined that the altering device or tracking device are malfunctioning, or if the alerting device does not go into "alert" mode within two hours after delivery. United States Postal Inspectors and other law enforcement officials seek authorization to retrieve the subject parcel, whether on private or public property."

The affidavits then contained the following statement:

"United States Postal Inspectors and other law enforcement officials will only use a properly functioning electronic alerting device and tracking device. If necessary, law enforcement officers then plan to secure

the location and submit any necessary further applications."

**Order for Controlled Delivery**

Each of the orders authorizing the use of a monitoring device recited a finding of probable cause to believe that a person using the name of the addressee residing at the address on the package was engaged in violations of Title 21 U.S.C. § § 841(a)(1), 843(b), 846 and Title 18 U.S.C. § 1716. The order stated that there was probable cause to believe that an electronic alerting device and tracking device installed in the subject express mail package will assist law enforcement officers in conducting surveillance of the express mail parcel and determining the moment which the parcel was opened and to monitor the movement of the parcel if is moved to a difference location than the delivery address.

The Order contained the following language:

"IT IS FURTHER ORDERED, on the basis of the aforementioned Application and Affidavit, and pursuant to Title 18 USC 3117(a), that <u>members of the United States Postal Inspection Service</u>, in conjunction with local enforcement, <u>may</u> install, monitor, utilize, and <u>retrieve</u> an <u>electronic alerting device and tracking device</u> within the above described package, either on public or private

5

property, <u>for a period of three (3) days</u>, or whenever the investigation may end, whichever is sooner. Should the electronic alerting device indicate that the package has been opened, or if the electronic alerting device malfunctions, law enforcement officers may retrieve the package and devices, either on public or private property. This authorization is for either day or night. Any search of the property where the package is opened or delivered will require application for a search warrant." (Emphasis added).

Before the packages were delivered the investigative/entry team met for a briefing. The officers talked about what they might do if the beeper alerted or if it malfunctioned or if it never alerted. The packages each contained a GPS and an alerting device. About three hours after the packages were delivered they were moved to a new location at 905 Muldoon, Space A78, by vehicle. The officers waited another three hours before entering the premise as 905 Muldoon.

Postal Inspector Kimberly Dallas did not recall what was announced by the entry team before entering the trailer at Space A78. Timothy Mallor, Special Agent (SA) for Drug Enforcement Agency, testified that usually the officers will

announce "Police. Search Warrant." before entering the premises. About six officers entered the premise and fanned out to conduct a protective sweep.

SA Mallor did not see the court order(s) before entering the premises. He relied upon the case agents (DEA and Postal Inspector) to inform him of the plan and assignments at the scene.

SA Mallor saw an adult female with two children inside. When he pushed on a door to a bedroom it was partially blocked. He could see a person later identified as the defendant who appeared to be just waking up from sleeping on the floor against the wall. He observed a pistol on the table about two feel from the defendant. He ordered the defendant to show him his hands. The defendant was handcuffed and asked if there were any other firearms in the room. He responded, "Yes," and the officers retrieved a case with rifles and another case with handguns.

At the evidentiary hearing Postal Inspector Dallas explained her understanding that the term "install" in the order refers to adding the GPS and Beeper Device to the package. The term "monitor" refers to the right to listen to the tone from the beeper and follow the signal from the tracking device. The term "utilize" refers to activating the alerting device and tracking device. The term "retrieve" refers to the right to locate the package(s) and regain possession of it. No evidence was presented of any exigent circumstance to require immediate entry in

7

the premise by the officers. The officers did not rely upon any other warrant for their entry.

## Discussion

In the instant case, the warrant did not contain language allowing entry to retrieve the alerting device after the elapse of two hours from the delivery. More importantly it did not use any language to allow entry beyond the electronic transmitter either indicating that the box had been opened or the transmitter malfunctioning. The order does not state that the officers may enter premises at will.

The government recognizes that the order does not use the exact language contained in the affiant's application. The evidence does not explain whether the omission of this language was intentional or merely overlooked. To authorize the officers' entry, the government relies upon the language in the orders wherein members of the Postal Inspection Service were authorized to retrieve an electronic alerting device during a period of three days unless the investigation ended sooner. *See* language underscored on page 5. The statement in its literal form authorizes law enforcement officers to install, monitor, utilize and retrieve an electronic alerting device for a period of three days. It does not describe the manner or conditions in which the alerting device may be installed, monitored, utilized or retrieved.

8

The second sentence of the last paragraph of the order addresses some conditions in which the package may be retrieved by the officers. If the alerting device indicates that the package has been opened then officers may retrieve the package. If the electronic alerting device malfunctions during the three days or earlier if the investigation terminates, the officers may retrieve the package. The order does not address the retrieval of the package based upon a duration of time after delivery of the package and the alerting device neither indicates that the package has been opened or the electronic alerting device has malfunctioned. Although the postal inspectors sought an authorization to retrieve the subject parcel if the alerting device does not go into alert mode within two hours after delivery this authority was not granted in the order.

Case law interpreting the Fourth Amendment requires courts to give a practical reading to a search warrant when the terms describing the scope of the warrant are ambiguous. Here, the government argues that the officers were entitled to rely upon the language in the warrant to retrieve the monitoring device. Although the warrant describes with particularity two circumstances under which the monitoring device may be retrieved, neither of these circumstances were present. Because the entry was not justified under the warrant the government must rely upon a recognized exception of the warrant requirement to justify the entry and subsequent seizure of evidence.

Xiong cites United States v. Lawson, 499 F. Appx. 711 (9th Cir. 2012) wherein the Ninth Circuit overturned the defendant's conviction for a felon in possession because the police did not comply with the conditions of the warrant. The government argues that the defendant's reliance upon Lawson is misplaced. The appellate case was not selected for publication in the Federal Reporter by the Ninth Circuit. The government objects to reliance upon an unpublished opinion which has no precedential value in this Circuit. Lawson arose in this district and this court can refer to cases arising from this district as long as the parties have ample opportunity to address the legal points for which the case is cited. Lawson is instructive regardless whether it is binding authority.

The government argues that the order in Lawson differs substantially from the orders in the instant case. In Lawson the transmitter prematurely emitted before the package left police custody. Lawson held is that the warrant did not justify entry into the defendant's residence. It is not disputed that an initial entry into a home is unlawful under the Fourth Amendment unless it is pursuant to a valid warrant or under one of the recognized exceptions to the warrant requirement. United States v. Hotal, 143 F.3d 1223, 1228 (9th Cir. 1998).

The government relies upon the good faith exception articulated in United States v. Leon, 468 U.S. 897, 923 (1984). The good faith exception as set out in Leon recognizes an exception to the exclusionary rule for "evidence obtained

in objectively reasonable reliance on a subsequently invalidated search warrant."
468 U.S. at 922. The Supreme Court reasoned that in such circumstances
"[p]enalizing the officer for the magistrate's error, rather than his own, cannot
logically contribute to the deterrence of Fourth Amendment violations." Id. at 921.
The Leon exception does not apply in the following circumstances:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

See Leon, 468 U.S. at 923.

Xiong argues that the orders are facially defective to the extent they court be read as broadly as suggested by the government to allow a "search" whenever and wherever within three days. By this argument, the defendant hopes to persuade the court that Leon cannot apply because the warrant/order is so facially deficient that reliance upon it is unreasonable.

The orders are not facially deficient. They do not omit or misstate information specifically required to be contained therein. There is no requirement

11

that the warrant describe factual situations when it does not apply. The orders do not lack particularity as to what is to be searched (retrieved), namely the package, or where it may be seized – at its final destination. The orders do not suffer from over breadth because the reference to three days addresses the time frame for the overall investigation not the individual steps to accomplish it. This leaves for consideration whether the officers' reliance on the orders for entry into the premises was objectively unreasonable.

The exclusionary rule serves to deter police misconduct by suppressing the fruits of that misconduct. <u>Leon</u> recognizes that it does not make sense to suppress evidence resulting form a magistrate's error in issuing a warrant. The magistrate judge is not an arm of law enforcement. In this case the subject warrant was prepared by and presented to the magistrate judge by the postal inspector. It is only fair that the language of the proposed warrant be strictly construed against its preparer. Here, the warrant was not objectively unreasonable rather, the officer's reliance on the warrant for entry was objectively unreasonable.

The good faith exception applies to evidence seized through the proper execution of a constitutionally invalid search warrant; but here the problem lies in the execution and not the constitutionality of the search warrant. "Good faith" in the Fourth Amendment context has nothing to do with police officers' subjective motives or intentions. The Supreme Court uses this phrase to refer to the objective

reasonableness of a police officer's belief in the validity or existence of a warrant that is, in fact, invalid or non existent. The good faith exception is not an exception to the requirement of the Fourth Amendment that all searches be "reasonable." Rather, it is an exception to the general rule that when police violate the Fourth Amendment the resulting evidence is inadmissible in the criminal prosecution of the victim of that unlawful search or seizure.

Reliance by officers upon language an officer "thought" was in the warrant is an unreasonable mistake. The language in the warrant governs the search and should be read carefully by the executing officer(s). The Fourth Amendment is not satisfied merely because the officer reasonably believed that he had a warrant authorizing the search; it requires that there actually be a warrant authorizing that entry.

The exclusionary rule is not constitutionally compelled but serves as an instrument for motivating conduct and conformity with the Fourth Amendment. The court concludes that the exclusionary rule should apply in the context of this case. It is patently unreasonable for an officer to construe a statement that the controlled delivery investigation should conclude in three days to mean that they can enter the premises at any time to retrieve their alerting device without further authorization by a court. If an officer had free reign to enter the premises anytime within three days to retrieve the alerting device then the stated conditions about the device alerting or

13

malfunctioning would be rendered superfluous. This is not a reasonable construction of the language in the warrants.

The particularity requirements of a warrant is not only to prevent general searches but also to assure the individual who's property is searched and seized of the executing officer's legal authority, his need to search, and the limits of his power to do so, <u>Groh v. Ramirez</u>, 540 U.S. 551, 124 S. Ct. 1284 (2004). The presumptive rule against warrantless searches applies equally to searches whose only defect is a lack of particularity in the warrant. <u>Id.</u> The government's argument that the search was constitutional because it was reasonable within the meaning of the Fourth Amendment fails. "The mere fact that the magistrate issued a warrant does not necessarily establish that he agreed that the scope of the search should be as broad as the affiant's request." <u>Id.</u> Officers leading a search team have a duty to make sure that they have a proper warrant that in fact authorizes the search and seizure they are about to conduct. <u>Id.</u> at n.6. Here, the affiant prepared the warrant and she may not argue successfully that the warrant means something that it does not state.

**Conclusion**

The execution of the beeper warrants exceeded the limits of the warrants. The <u>Leon</u> good faith exception does not save the warrants. No showing has been made that the warrants were invalid; rather the execution of the warrants

was not done with a reasonable belief of what was authorized.  In light of this conclusion, the court need not address the lawfulness of the protective sweep, the manner of search for the packages inside the residence or whether the guns were found in plain view.  Because of the Fourth Amendment violation, the jury will not be able to consider tainted evidence in assessing the guilt or innocense of defendant who experienced the Fourth Amendment violation.

The Motion to Suppress has merit and should be GRANTED.  IT IS SO RECOMMENDED.

DATED this 25th day of July, 2013, at Anchorage, Alaska.

*/s/ John D. Roberts*
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to Rule 59(b)(3), Federal Rules of Criminal Procedure, any objections will be considered by the District Court Judge who will accept, reject, or modify the recommendation, or resubmit the matter to the Magistrate Judge for additional consideration and recommendation.  Failure to object in accordance with this rule waives a party's right to review.

In light of the impending trial date objections to this report and recommendation shall be served and filed no later than **Noon, Thursday August 1, 2013.**  Responses to objections are due by **3:00 PM, Friday, August 2, 2013.**  Objections and responses shall not exceed 5 pages in length, and shall not merely

reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.